**In re Phenique HAYES, Debtor.**

**Phenique Hayes, Plaintiff,**

v.

**Anthony B. DiSalle, Trustee, Defendant.**

**Nos. 02–3007, 01–34401.**

United States Bankruptcy Court, N.D. Ohio.

Dec. 2, 2002.

Elizabeth A. Vaughan, Toledo, OH, for Anthony B. DiSalle.

Gordon R. Barry, Toledo, OH, for Phenique S. Hayes.

### ORDER

RICHARD L. SPEER, Bankruptcy Judge.

The instant cause comes before the Court after a Trial on the Plaintiff's Complaint to Determine the Validity of a Deed of Transfer. The specific relief sought by the Plaintiff is a declaratory judgment that a certain transfer of real estate made in 1993 to the Plaintiff by the Plaintiff's parents is ineffective, and thus is excluded from the Plaintiff's Chapter 13 bankruptcy estate. As it pertains thereto, it is the Plaintiff's contention that she never "accepted" a 1993 deed executed by her parents, and therefore the deed did not effectuate a valid transfer of property for purposes of Ohio law.

On the issue of her acceptance of the 1993 deed, the following facts are not in dispute:

On April 2, 1993, the Plaintiff's parents, Ray Hayes and Shelby Hayes, executed a general warranty deed granting to the Plaintiff their interest in their home located at 823 Keil Street, Toledo, Ohio; this deed was subsequently recorded on April 6, 1993. In making this grant, the Plaintiff's parents reserved unto themselves a life estate interest in the property. At the time of this transaction, the Plaintiff, who was living with her parents in the property, was 18 years of age.

The Plaintiff's parents, who have maintained an interest in the property located at 823 Keil Street since 1971, have at all times been responsible for the taxes and other expenses associated with the property. Presently this property, which is worth approximately $70,000.00, is free and clear of all liens.

From 1993 to 1998, the Plaintiff attended Kent State University on an intermittent basis.

In March of 2001, the Plaintiff saw her attorney, Mr. Barry, about possibly filing for bankruptcy. Thereafter, on May 18, 2001, the Plaintiff executed a survivorship tenancy deed wherein she conveyed the Keil Street property back to her parents. In making this grant, the Plaintiff, in a similar fashion to the 1993 deed executed by her parents, retained for herself a life estate interest in the premises. (Plaintiff's Exhibit No. 2).

On July 11, 2001, the Plaintiff filed a petition in this Court for relief under Chapter 13 of the United States Bankruptcy Code. In her bankruptcy petition, the Plaintiff listed a total of $33,724.58 in unsecured debt; of this amount, $14,315.18 was comprised of student loan obligations.

After filing her bankruptcy petition, the Plaintiff began to again reside with her parents.

In addition to the above information, the Parties stipulated to, and the Court agrees with, the facts set forth in the Defendant/Trustee's Chapter 13 worksheet wherein it was disclosed that the Plaintiff could, by paying her student loan obligations outside her Chapter 13 plan, accomplish a 100% repayment plan in 44 months. As it concerns this fact, however, the Plaintiff related to the Court that if she is successful in the instant matter, she will convert her case to a liquidating bankruptcy under Chapter 7.

### DISCUSSION

At issue in the instant case is the validity of a transfer of an interest in real

property. As resolution of this issue concerns both the administration and liquidation of assets of the Debtor's bankruptcy estate, this a core proceeding pursuant to 11 U.S.C. § 157(b)(2)(A)/(O).

■ Under Ohio law, a deed will only pass title to property if (1) the deed is validly delivered by the grantor, and (2) then accepted by the grantee. *Gatts v. E.G.T.G., GMBH,* 14 Ohio App.3d 243, 246, 470 N.E.2d 425 (1983). As it applies to these requirements, the Parties in this case do not dispute the fact that the Plaintiff's parents, in executing and then recording a deed to their daughter in 1993, effectuated a valid delivery of the deed.[1] Instead, the Plaintiff, in support of her position that she never received valid title to her parents' property, argues that she never validly accepted the deed for purposes of Ohio law. This assertion is posited on what are essentially three different claims.

First, the Plaintiff asserts that in 1993 she had no knowledge that she was named as the grantee in the deed executed by her parents. Second, the Plaintiff claims that she only learned of her status as a named grantee of her parents' property when, in May of 2001, after seeing an attorney regarding her financial difficulties, she discussed with her parents her plans to file for bankruptcy. Finally, it is the Plaintiff's position that, upon learning of the 1993 deed executed by her parents, she immediately repudiated it by executing a deed which transferred back to her parents any interest that they had attempted to put in her name. These claims were supported by the testimony of both the Plaintiff and the Plaintiff's mother.

■ It is a general principle of law in Ohio that a person cannot be compelled to take a conveyance against his or her consent. *See, e.g., Ohio Nat. Bank v. Miller,* 57 N.E.2d 717, 25 Ohio Ops.2d 465 (1943). Thus, a grantee's acceptance of a deed is prerequisite to a valid transfer of title. Whether an acceptance has occurred is dependent on the individual facts of each case; however, in cases such as this, where the transfer is plainly beneficial to the grantee, acceptance will be presumed in the absence of proof to the contrary. *Mitchell v. Ryan,* 3 Ohio St. 377, 1854 WL 24 (1854). This principle was explained by the Ohio Supreme Court of Ohio as follows:

> where the grant is a pure, unqualified gift, I think the true rule is that the presumption of acceptance can be rebutted only by proof of dissent; and it matters not that the grantee never knew of the conveyance, for as his assent is presumed from its beneficial character, the presumption can be overthrown only by proof that he *did* know of and *rejected* it.

*Id.* at 387.

■ For purposes of the above holding, an affirmative rejection, as the Plaintiff argues, may be accomplished by the grantee, upon learning of the transfer, immediately executing a deed which transfers back to the grantor the property originally conveyed. (For a complete list of cases see C.R. McCorkle, Annotation, *What Constitutes Acceptance of Deed by Grantee,* 74 A.L.R.2d 992, 1960 WL 13375 (1960)). In applying this principle to this case, the Court does not have any reason to question the Plaintiff's position, (although it is clearly self-serving) that she only became aware of her interest in her parents' property during the period immediately preceding the filing of her bankruptcy peti-

---

1. In this regard, it is noted that the recording of a deed by a grantor raises a presumption of delivery. *Weinlein v. Bedford,* 138 N.E.2d 178, 73 Ohio Law Abs. 378 (1956).

tion. In this regard, it does not seem out of the ordinary that parents would not initially tell their teenage daughter, who was about to enter college, about a significant financial matter. Along this same line, it does not seem highly unusual that a child, such as the Plaintiff who is not yet 30 years of age, would only be told of a significant transfer of property until the circumstances so required.

■ However, despite the Plaintiff's initial lack of knowledge of the transfer made by her parents, there exists a serious weakness with the Plaintiff's contention that, by executing a deed of the Keil street property back to her parents in 2001, she actually intended to reject the acceptance of the first deed. This is because a close examination of the 2001 deed executed by the Plaintiff to her parents shows that the Plaintiff retained for herself a life estate interest in the property, an act which is entirely inconsistent with a grantee's intent to reject the acceptance of a transfer. *See, e.g., Nutz v. Shepherd*, 490 S.W.2d 366, 371 (Mo.Ct.App.1973) (intention to accept title to property may be inferred from such conduct as conveying or mortgaging the property). Nevertheless, for the reasons set forth below, the Plaintiff's reservation of a life estate in the Keil Street property is, perhaps, a moot point.

■ In this case, the Plaintiff has clearly stated that if the Keil Street property is not included within her bankruptcy estate, she will convert her case to a liquidating bankruptcy under Chapter 7 of the Bankruptcy Code. A debtor in a Chapter 7 bankruptcy, however, is subject to § 707(b) which provides that a bankruptcy court may, on its own motion, dismiss a case filed by a Chapter 7 debtor whose debts are primarily consumer debts, if it finds that the granting of relief would be a substantial abuse of the provisions of Chapter 7.[2] The primary purpose of § 707(b) is to prevent debtors, who clearly have the means by which to pay their debts from their excess disposable income, from using Chapter 7 as a means to shirk their financial obligations. *In re Lee*, 162 B.R. 31 (Bankr.N.D.Ga.1993); *In re Marshalek*, 158 B.R. 704, 708–09 (Bankr. N.D.Ohio 1993).

■ To determine whether "substantial abuse" exists, the Sixth Circuit Court of Appeals has held that a bankruptcy court should look to the totality of the circumstances. *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989). In doing so, the Sixth Circuit stated that:

> [a]mong the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease.

*Id.* (internal citation omitted). As applied to this case, the undisputed evidence shows that, based upon her disposable income at the time she filed for bankruptcy relief, the Plaintiff could, by paying her student loans outside a plan of reorganization, effectuate a 100% repayment plan of her unsecured creditors in just 44 months. The evidence in this case also reveals that the Plaintiff, since filing for bankruptcy relief, has moved back to live with her

---

**2.** The actual text of this provision provides, in relevant part, "[a]fter notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter."

parents, thus likely increasing the amount of disposable income the Plaintiff now has available to pay her debts. Thus, given these set of facts, the Plaintiff's intention of converting her case to a Chapter 7 presumptively invokes § 707(b). *See, e.g., Fonder v. United States,* 974 F.2d 996, 999 (8th Cir.1992) (substantial abuse found where, under a conservative estimate, the debtor could pay 89% of his unsecured debt in three years and 100% in five years); *In re Edwards,* 50 B.R. 933 (Bankr.S.D.N.Y.1985) (debtor should proceed under Chapter 13 where 100% of secured debt could be paid in three years); *In re Peluso,* 72 B.R. 732 (Bankr.N.D.N.Y. 1987) (case dismissed where debtor could repay 100% of unsecured debt in five years). As a result, the Plaintiff's proper avenue for bankruptcy relief is under Chapter 13 where, upon confirmation of her plan of reorganization, any property that is encompassed within her bankruptcy estate will be revested in her pursuant to 11 U.S.C. § 1327(b).

Accordingly, for the foregoing reasons, the Court finds that, as it relates to bankruptcy law, the Plaintiff's complaint to determine the validity of the transfer between the Plaintiff and her parents is moot. As such, the Plaintiff's complaint for a declaratory judgment concerning the transfer of the Keil Street property will be Dismissed. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Complaint filed by the Plaintiff, Phenique Hayes, be, and is hereby, DISMISSED.

